UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVERSE THERAPY SERVICES, PLLC,<br><br>Plaintiff,<br><br>v.<br><br>SADLER-BRIDGES WELLNESS GROUP, PLLC, JAMES BOULDING-BRIDGES, HALEY CAMPBELL,<br><br>Defendant. | CASE NO. 2:23-cv-1239<br><br>ORDER DENYING MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 16.) Having reviewed the Motion, the Response (Dkt. No. 27), the Reply (Dkt. No. 36), and all other relevant material, the Court DENIES the Motion.

**BACKGROUND**

This case arises from the alleged theft of trade secrets by former employees of Plaintiff Traverse Therapy Services PLLC ("Traverse"). (Complaint ("Compl.") ¶ 1.1.) Traverse offers counseling and therapy in the mental health and interpersonal relationship fields. (Compl. ¶ 2.1.)

Traverse alleges former employees used Traverse's customer list to solicit at least fifty (50) clients and diverted them to Defendants' competing business. (Compl. ¶ 1.1.)

Defendant James Boulding-Bridges ("Bridges") previously worked for Traverse as a supervisory therapist until April 2023. (Compl. ¶ 2.5.) He then left to co-found Defendant Sadler-Bridges Wellness Group ("Sadler-Bridges"), with another former Traverse employee, Raquel Sadler. (Id.) Defendant Haley Campbell ("Campbell") worked as a therapist for Traverse until she resigned in July 2023 to go work for Sadler-Bridges. (Id. at ¶ 2.4.) It appears other Traverse employees resigned and began working for Sadler Bridges since its inception and this lawsuit. (See id. at ¶ 4.10.) When Campbell resigned, she sent an email to approximately fifty (50) clients to let them know she would be leaving Traverse and going to work for another practice. (Id. at ¶ 4.13.) Campbell offered to continue providing services for clients who wished to follow her, but noted that she would assist any clients interested in finding a new therapist. (Id.) Her email included a list of insurance providers her new practice would accept and provided a non-Traverse email clients could use to contact her. (Id.) Her email did not include information alerting clients to the possibility that they could continue to be seen at Traverse with a different therapist. (See, id.)

Because Campbell is an associate therapist, she cannot bill insurance directly. (Compl. ¶ 4.15.) Traverse alleges that in order for Campbell to know what insurance she would be providing moving forward, "she would have necessarily conspired with Bridges and [Sadler-Bridges] beforehand . . ." (Id.) Traverse alleges Campbell and other employees' resignation from Traverse was coordinated with Sadler-Bridges with the intent of soliciting clients of Traverse to bring to Sadler-Bridges. (Id. at ¶ 4.18.) Traverse then filed this suit bringing claims under the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA"), Washington's Uniform Trade

Secrets Act ("UTSA"), and Intentional Interference with Business Expectancy. (Compl. ¶¶ 5.1-5.18.) Defendants brought a Motion to Dismiss focusing only on the sufficiency of Traverse's DTSA claim. Defendants clarify that because the Motion relies on materials outside the pleadings, it is actually a Motion for Summary Judgment. (Mot. at 1.)

## ANALYSIS

**A.    Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As a preliminary matter, the Court notes that Defendants have submitted declarations and an exhibit in support of their Motion to Dismiss. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation and citation omitted). A motion to dismiss made pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 if either party to the motion to dismiss submits materials outside the pleadings in support of, or opposition to, the motion, and if the court relies on those materials.

1   Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). But the Court has discretion either to

2   consider or reject such evidence. See Swedberg v. Marotzke, 339 F.3d 1139, 1143-46 (9th Cir.

3   2003) (where a district court does not rely on the materials submitted outside the pleadings, a

4   motion to dismiss need not be converted into a motion for summary judgment). If a court

5   converts a motion to dismiss into a motion for summary judgment, the court must give the

6   parties notice and a reasonable opportunity to supplement the record. Bank Melli Iran v. Pahlavi,

7   58 F. 3d 1406, 1408 (9th Cir. 1995).

8       Here, the evidence submitted by Defendants is not subject to judicial notice or otherwise

9   appropriate for the Court to consider without converting Defendants' Motion to Dismiss into a

10  Motion for Summary Judgment. Defendants submit the declarations of Defendant Haley

11  Campbell, Raquel Sadler and James Boulding-Bridges, as well as the "2014 ACA Code of

12  Ethics." (Mot. at 3.) Because the declarations are largely Defendants' denials of Traverses

13  allegations and therefore inherently create a dispute of fact that is inappropriate for an award of

14  summary judgment, and the Code of Ethics is not cited to in Defendants' argument, the Court

15  does not rely on any of the evidence submitted by Defendants. The Court declines to convert

16  Defendants' Motion to Dismiss into a Motion for Summary Judgment.

17      1.    Jurisdiction

18      A defendant may move to dismiss an action for lack of subject matter jurisdiction

19  pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a

20  complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of

21  subject matter jurisdiction will be granted if the complaint fails to allege facts sufficient to

22  establish subject matter jurisdiction. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039

23  n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face

24

1   of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve

2   factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d

3   558, 560 (9th Cir. 1988).

4         Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil

5   action . . . if the trade secret is related to a product or service used in, or intended for use in,

6   interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The statute confers original jurisdiction

7   on United States district courts. Id. § 1836(c). "There is dispute among courts about whether the

8   interstate-commerce requirement is jurisdictional or merely an element of misappropriation

9   claim brought under the DTSA." Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder

10  Treatment Ins. PLLC, 603 F. Supp. 3d 799, 807 (D. Ariz. 2022). Though the issue has not been

11  resolved by the Ninth Circuit or any other circuit, district courts in the Ninth Circuit have tended

12  to treat the interstate-commerce requirement as jurisdictional. Id. (collecting cases). And since

13  the parties do not argue it is not jurisdictional, the Court assumes for the purposes of this order

14  that the requirement is jurisdictional.

15        The facts of Gordon Grado are similar to those here, and both parties cite to it. In Gordon

16  Grado the defendant previously worked for plaintiff at plaintiff's medical facility. 603 F. Supp.

17  3d at 805. Defendant then started his own competing medical practice nearby, and took

18  plaintiff's former employees and patient lists with him. Id. Plaintiff sued and brought a DTSA

19  claim as well as state law claims against defendant. Id. at 806. Defendant moved to dismiss

20  claiming the district court did not have jurisdiction under the DTSA. The court in Gordon Grado

21  found plaintiff had sufficiently pled a nexus between its DTSA claim and interstate commerce.

22  Id. at 808. The court found plaintiff's allegations that its facility treated patients who traveled

23  from Nevada to Arizona, and that plaintiff received payments through Medicare and Medicaid,

24

1  which have been previously found by courts to constitute an act in interstate commerce, were

2  sufficient to state a claim for relief. Id.

3        Similarly, Traverse has sufficiently pled a nexus between its DTSA claim and interstate

4  commerce. Traverse alleges clients paid for services from Traverse through interstate insurance

5  plans, including Medicare and Medicaid, and some of Traverse's clients travel from out of state

6  into Washington for services. (Compl. ¶ 5.2; Declaration of Catherine Southard at 3 (Dkt. No.

7  29); Declaration of Daniel Spurgeon at 2-3 (Dkt. No. 30).) Many of these clients were allegedly

8  solicited by Campbell via her July email. (Compl. ¶ 5.2.) Traverse also alleges Defendants used

9  the internet to accomplish their misappropriation and offered interstate insurance billing, which

10 also affects interstate commerce. (Id. at ¶ 5.3.)

11       Defendants' argument that the Court lacks jurisdiction fails. Defendants' argument is two

12 paragraphs long and only cites to Gordon Grado to argue the DTSA requires the alleged trade

13 secrets to be connected to a service intended for use in interstate commerce. (Mot. at 5.)

14 Defendants cite to no other case law in support. And Defendants' argument is merely a

15 conclusory statement that the case is contained in Washington. (Mot. at 5.) Defendants do not

16 argue Traverse's complaint fails to properly allege jurisdiction. Even if the Court were to convert

17 the motion into a motion for summary judgment, Defendants fail to cite to one piece of evidence

18 that would support their contentions. And Defendants' Reply brief fares no better. Rather,

19 Defendants rely exclusively on Campbell's email and her declaration to argue that her services

20 did not affect interstate commerce. (Reply at 3.) Ironically, Defendants point out that Ninth

21 Circuit case law dictates that conclusory statements of fact are not sufficient to warrant summary

22 judgment. (Id. at 4-5) (citing Ballen v. City of Redmond, 466 F.3d 736, 745 (9th Cir. 2006).) Yet

23 that is exactly what Defendants do here. And Defendants fail to address Traverse's allegations

24

ORDER DENYING MOTION TO DISMISS - 6

that Campbell's email is one part of a large scheme to divert business from Traverse. For these reasons, Defendants' argument fails.

Because Traverse has sufficiently pled a nexus to interstate commerce, which this Court must take as true, the Court DENIES Defendants' Motion regarding the Court's jurisdiction.

### 2. Failure to State a Claim

Traverse alleges Defendants misappropriated trade secrets in violation of the DTSA and the UTSA, RCW 19.108.010 et seq. The elements of a DTSA and UTSA claim are substantially similar. Compare 18 U.S.C. § 1839(5), with RCW 19.108.010(2). A plaintiff asserting a DTSA or UTSA claim must establish (1) the existence of a protectable trade secret, and (2) facts constituting misappropriate. NW Monitoring LLC v. Holander, 534 F. Supp. 3d 1329, 1336 (W.D. Wash. 2021). The two laws define misappropriation, in the relevant part, as follows:

(A) Acquisition of a trade secret of another person by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure of use of a trade secret of another without express or implied consent by a person who –

    (i) Used improper means to acquire knowledge of the trade secret;
    (ii) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was –

        (I) Derived from or through a person who had used improper means to acquire the trade secret;
        (II) Acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (III) Derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5); RCW 19.108.010(2).

Improper means includes "theft, bribery, misrepresentation, [or] breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6); RCW 19.108.010(1). Although the

| | |
|---|---|
| 1 | complaint need not "spell out the details of the trade secret," a plaintiff seeking relief for trade |
| 2 | secret misappropriation must identify the trade secret "with sufficient particularity . . . to permit |
| 3 | the defendant to ascertain at least the boundaries within which the secret lies." SMS Signature |
| 4 | Cars v. Connects Mktg. LLC, No. SACV 12-1300 JVC (ANx), 2012 WL 12893935, at *2 (C.D. |
| 5 | Cal. Oct. 29, 2012) (internal quotations omitted); see also, MAI Sys. Corp. v. Peak Comp., Inc., |
| 6 | 991 F.2d 511, 522 (9th Cir. 1993). |
| 7 |       Traverse has alleged plausible acts of misappropriate by Defendants. Traverse alleges its |
| 8 | present and past client lists are properly categorized as a trade secret. (Compl. ¶ 4.1.) It further |
| 9 | alleges it took reasonable steps to protect these lists, and that Defendants misused their |
| 10 | employment to access and acquire the lists, and use them to solicit Traverse's clients into |
| 11 | switching providers. (Id. at ¶¶ 4.4-4.21.) Due to the loss of clients, Traverse has experienced |
| 12 | significant financial loss. (Id. at ¶ 4.25.) |
| 13 |       Defendants make three arguments in support of their motion – all of which fail. First, |
| 14 | Defendants argue Traverse's client list is not entitled to trade secret protection. (Mot. at 5-6.) |
| 15 | Defendants' argument is premised on their contention that Traverse acted inconsistently to the |
| 16 | notices given by therapists who departed Traverse to go work at Sadler-Bridges. (Id.) |
| 17 | Specifically, Traverse knew Boulding-Bridges and Sadler informed their clients of their |
| 18 | departure, but only took issue with Campbell's departure notice. (Id.) This is inconsistent with |
| 19 | the facts alleged by Traverse. Traverse alleged that shortly after one of its therapists resigned to |
| 20 | go work for Sadler-Bridges, it sent a letter to Sadler-Bridges reminding them of the UTSA and |
| 21 | warned it against using Traverse employees to get client lists. (Compl. ¶ 4.11.) This notice |
| 22 | occurred before Campbell's departure. Nevertheless, Defendants argue that in order for the client |
| 23 | list to be a trade secret, Traverse had to have the same course of conduct and behavior towards |
| 24 | |

ORDER DENYING MOTION TO DISMISS - 8

the client notices, which it did not do. (Mot. at 6.) Defendants' sole support for this contention is an out of circuit case, Nw. Airlines v. Am. Airlines, 853 F. Supp. 1110, 1115 (D. Minn. 1994). (Id.) But Nw. Airlines discussed whether the airline at issue took reasonable efforts to maintain secrecy such that the employer signaled to employees that certain information is confidential. 853 F. Supp. at 1115. Here, Traverse alleges that at all relevant times its trade secrets were protected via password, locked in physical files, and practices restricted the information to those who possessed a legitimate need to know. (Compl. ¶ 4.4.) And Traverse's alleged letter to Sadler-Bridges reminding them of their obligations contradicts Defendants' argument that Traverse acted inconsistently. The Court finds Traverse has alleged sufficient allegations that it took steps to protect its trade secrets such that employees would be on notice.

Second, Defendants argue no misappropriation occurred. Defendants' threadbare arguments here are unconvincing. Defendants' argument focuses solely on Campbell's email. (Mot. at. 6.) Defendants attempt to simplify Campbell's email to a routine course of conduct, and with regard to her departure notice, a notice she was obligated to provide. (Id.) If the email using the client contact list had been a trade secret, Defendants argue it was done without knowledge or wrongful use of the information. (Id.) Defendants cite to no support for their arguments, but even if they had, this is an issue of fact not proper for a motion to dismiss. Though the Court does question whether Campbell's client list would qualify as a trade secret and whether an email to her clients alerting them of her departure constitutes misappropriation, the Court is not obligated to make that decision today. The Court finds Traverse has properly alleged Defendants engaged in misappropriation.

Third, Defendants argue Campbell's email is not a solicitation. Defendants argue the contents of Campbell's email is a simple announcement regarding the change in her practice

location. (Mot. at 7.) Traverse, in contrast, argues that if it were a simple notification then it should have contained a notice alerting the clients that they could continue being seen at Traverse. (Opposition at 16.) The Court does not opine on the substance of these arguments. Because the arguments go to the substance of Campbell's email and the merits of the case, not the factual sufficiency of the complaint, it fails. The Court finds Traverse properly alleged the email was intended to promote Defendants' business and, in doing so, harm Traverse.

## CONCLUSION

The Court DECLINES to convert Defendants' Motion to Dismiss into a Motion for Summary Judgment given it did not rely on the evidence submitted by Defendants. Having reviewed the briefs, the Court finds Traverse has sufficiently alleged a claim under the DTSA. The Court DENIES Defendants' Motion to Dismiss.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 1, 2024.

Marsha J. Pechman
United States Senior District Judge