1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   TRAVERSE THERAPY SERVICES,
     PLLC,

11                              Plaintiff,

12           v.

13
     SADLER-BRIDGES WELLNESS
14   GROUP, PLLC, JAMES BOULDING-
     BRIDGES, HALEY CAMPBELL,

15
                               Defendants.
16

CASE NO. C23-1239

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

17

18         This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment.

19   (Dkt. No. 46.) Having reviewed the Motion, the Response (Dkt. No. 63), the Reply (Dkt. No.

20   73), and all other supporting material, the Court DENIES the Motion and <u>sua sponte</u> GRANTS

     Summary Judgment in favor of Defendants.
21

22                                        **BACKGROUND**

23         This case arises from the alleged theft of trade secrets by former employees of Plaintiff

24   Traverse Therapy Services PLLC ("Traverse"). (Complaint ("Compl.") ¶ 1.1.) Traverse offers

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

1    counseling and therapy in the mental health and interpersonal relationship fields. (Compl. ¶ 2.1.)

2    Traverse alleges former employees used Traverse's customer list to solicit at least fifty (50)

3    clients and diverted them to Defendants' competing business. (Compl. ¶ 1.1.) Defendant James

4    Boulding-Bridges ("Bridges") previously worked for Traverse as a supervisory therapist until

5    April 2023. (Compl. ¶ 2.5.) He then left to co-found Defendant Sadler-Bridges Wellness Group

6    ("Sadler-Bridges"), with another former Traverse employee, Raquel Sadler. (Id.) Defendant

7    Haley Campbell ("Campbell") worked as a therapist for Traverse until she resigned in July 2023

8    to go work for Sadler-Bridges. (Id. at ¶ 2.4.) It appears other therapists working for Traverse also

9    resigned and went to work at Sadler Bridges during this time period as well. (Id. at ¶ 4.13.)

10           When Campbell resigned, she sent an email to approximately fifty (50) clients to let them

11    know she would be leaving Traverse and going to work for another practice. (Compl. ¶ 4.13.)

12    Campbell offered to continue providing services for clients who wished to follow her, but noted

13    that she would assist any clients interested in finding a new therapist. (Id.) Her email included a

14    list of insurance providers her new practice would accept and provided a non-Traverse email

15    clients could use to contact her. (Id.)

16           Because Campbell is an associate therapist, she cannot bill insurance directly. (Compl. ¶

17    4.15.) Traverse alleges that in order for Campbell to know what insurance she would be

18    providing moving forward, "she would have necessarily conspired with Bridges and [Sadler-

19    Bridges] beforehand . . ." (Id.) Traverse alleges Campbell and other employees' resignation from

20    Traverse was coordinated with Sadler-Bridges with the intent of soliciting clients from Traverse

21    to Sadler-Bridges. (Id. at ¶ 4.18.) Traverse filed this suit bringing claims under the Defend Trade

22    Secrets Act, 18 U.S.C. § 1832 et seq. ("DTSA"), and Washington's Uniform Trade Secrets Act

23    ("UTSA"), as well as an Intentional Interference with Business Expectancy claim. (Compl. ¶¶

24

1    5.1-5.18.) Traverse now brings a Motion for Partial Summary Judgment on its DTSA and UTSA

2    claims.

3                                           **ANALYSIS**

4    **A.     Summary Judgment Standard**

5            Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

6    file, and any affidavits show that there is no genuine issue as to any material fact and that the

7    movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

8    an issue of fact exists, the Court must view all evidence in the light most favorable to the

9    nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

10   Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is

11   sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The

12   moving party bears the initial burden of showing there is no evidence which supports an element

13   essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the

14   movant has met this burden, the nonmoving party then must show there is a genuine issue for

15   trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a

16   genuine issue of material fact, "the moving party is entitled to judgment as a matter of law."

17   Celotex, 477 U.S. at 323-24.

18   **B.     DTSA and UTSA**

19           Traverse alleges Defendants misappropriated trade secrets in violation of the DTSA and

20   the UTSA. Because Traverse fails to meet the threshold requirement of demonstrating the

21   existence of a protectable trade secret, it's Motion for Summary Judgment fails.

22           The elements of a DTSA and UTSA claim are substantially similar. Compare 18 U.S.C. §

23   1839(5), with RCW 19.108.010(2). Under the DTSA, "[a]n owner of a trade secret that is

24

1    misappropriated may bring a civil action . . . if the trade secret is related to a product or service

2    used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A

3    plaintiff asserting a DTSA or UTSA claim must establish (1) the existence of a protectable trade

4    secret, and (2) facts constituting misappropriate. NW Monitoring LLC v. Holander, 534 F. Supp.

5    3d 1329, 1336 (W.D. Wash. 2021)."A plaintiff seeking to establish a trade secrets claim under

6    the uniform act has the burden of proving that legally protectable secrets exist." Boeing

7    v.Sierracin Corp., 108 Wn.2d38, 49-50. Before determining whether Defendants' acts constituted

8    misappropriation, the Court must first assess whether there is a protectable trade secret.

9         Traverse asserts its patient identities and contact information is a protectable trade secret.

10   The Court disagrees. A trade secret is information that (1) derives independent economic value

11   from not being generally known to, and not being readily ascertainable by proper means; and (2)

12   is the subject of efforts that are reasonable under the circumstances to maintain secrecy." RCW

13   19.108.010(4). "A key factor in determining whether information has 'independent economic

14   value' under the statute is the effort and expense that was expended in developing the

15   information." McCallum v. Allstate Prop. & Cas. Ins. Co., 149 Wn.App. 412, 424 (2009). The

16   allegedly unique, innovative, or novel information must be described with specificity and,

17   therefore, "conclusory" declarations that fail to "provide concrete examples" are insufficient to

18   support the existence of a trade secret. Id. at 425-26. Compilations of customer information may

19   be a trade secret. Ed Nowogroski Ins., Inc. v. Rucker, 137 Wn.2d 427, 440 (1999). "[W]hether a

20   customer list is protected as a trade secret depends on three factual inquiries: (1) whether the list

21   is a compilation of information; (2) whether it is valuable because unknown to others; and (3)

22   whether the owner has made reasonable attempts to keep the information secret." Id. at 442.

23

24

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1    Traverse puts forth no evidence to suggest that its patient list constitutes a trade secret;

2    rather, Traverse conflates the mere existence of a patient list that it is legally required to keep

3    confidential per the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")

4    with a trade secret. HIPAA is a federal law that requires entities to protect and keep confidential

5    individually identifiable health information. See 42 U.S.C. § 1320d-2; 45 C.F.R. § 160.103.

6    Neither party disagrees the patient list is a compilation of information – namely contact

7    information – that was kept secret, and that it was done so pursuant to HIPAA. For example, in

8    its Reply brief, Traverse acknowledges "HIPAA is an alternative and independent basis for

9    secrecy of therapy client information . . ." (Reply at 7.) Additionally, the president of Traverse,

10    Catherine Southard's own declaration explains that Defendants knew client identities and contact

11    information was secret because "HIPAA . . . mandates . . . that clients' personal health

12    information be kept secure and secret." (Declaration of Catherine Southard at ¶ 4 (Dkt. No. 75).)

13    Southard also acknowledges that all of Traverse's computers are password protected and

14    physical files containing client information are kept locked in order to be "HIPAA-compliant."

15    (Id. at ¶ 6.) The information was restricted, but the briefs and supporting materials demonstrate

16    this was pursuant to HIPAA, not to keep trade secret information confidential.

17    The Court also finds that Traverse fails to demonstrate the information is valuable

18    because it is kept secret or that Traverse underwent effort and expense in developing the

19    information. Traverse claims the patient list and contact information is valuable because it is

20    marketing information that competitors could use. Traverse argues that unlike other industries,

21    there is no public database of persons willing and able to purchase therapy services. (Motion at

22    5-6.) Traverse uses the example of a roofing contractor who sees a house with bad shingles to

23    distinguish itself from other services. (Id. at 6.) But this analogy is flawed as most industries

24

1   cannot look at person and determine what their needs are, and most service providers do not

2   walk the street attempting to find potential clients. Nor does Traverse claim it actually used the

3   information to market services to its patients or that it undertook effort and expense to develop

4   the information. Rather, patients were passively marketed to by therapists, including by

5   Defendants, by placing their profile on Psychology Today, where individuals seeking services

6   could peruse and contact therapists. (Declaration of Haley Campbell at ¶ 3 (Dkt. No. 66).)

7   Though Traverse claims it paid for the Psychology Today profiles for its employees, this does

8   not aid its argument. (Southard Decl. at ¶ 2.) Paying for employees' profiles on a website that is

9   utilized to direct potential patients to services demonstrates this is how Traverse marketed its

10  services. What it fails to do is demonstrate that the normal patient information Traverse received

11  as a result of this marketing, and through the natural course of collecting patient information, is a

12  trade secret. Just because Defendants used patient contact information to alert them that they

13  were moving practices and some patients followed their mental health provider to a new practice,

14  does not mean the information is a trade secret. Instead, the undisputed facts suggest that the

15  patient information was compiled through Traverse's normal course of business. The Court finds

16  Traverse fails to demonstrate the patient information is in any way innovative or contains such

17  unique information that competitors would want the information in order to enjoy a competitive

18  advantage.

19          Traverse argues this case is similar to Trost v. Aesthetic Litetouch, Inc, P.S., 151

20  Wn.App. 1002 (2009) (unpublished). In Trost, a registered nurse ("RN") at a high-end cosmetic

21  medical practice left her employer to go work at a competing cosmetical medical practice and

22  took with her a list of patient contact information and treatment histories. 151 Wn.App. at *1.

23  The RN used the patient lists to solicit business from individuals who had previously received

24

1   treatment from her previous employer. Id. Prior to leaving, her employer forbid her from taking

2   any patient records or copying down any patient information. Id. The Washington Court of

3   Appeals upheld the trial court's granting of summary judgment in favor of the employer on its

4   trade secrets claim reasoning that there was no dispute of fact that the patient list was valuable

5   because even the RN  acknowledged it allowed her new employer to solicit business from

6   individuals they knew were likely to get treatment. Id. at *4.

7         The facts in Trost are distinguishable from those here for three reasons. First, unlike in

8   Trost, there is no agreement that Traverse's patient list has economic value. And Traverse's

9   assertions that it does is belied by its lack of evidence and its tacit acknowledgement it advertised

10   through its providers' Psychology Today profiles. Second, the services at issue are also different.

11   In Trost, the competing services were cosmetic procedures – an industry in which different

12   procedures and treatments are available, are sought by clients at different intervals, and which

13   companies can direct advertisements to by offering discounts or recommending new procedures

14   based on what patients have had in the past. In contrast, here, the services being provided are

15   ongoing mental health services more akin to a patient seeing a primary care doctor than a

16   dermatologist or plastic surgeon. Again Traverse puts forth no evidence to suggest it sent

17   mailings to its patients offering new services or discounts that could be utilized by a competitor.

18   And third, the most critical difference is that the RN acknowledged she worked under the

19   supervision of a physician and therefore had no professional responsibility to inform patients of

20   her new whereabouts. 151 Wn. App. at *1. Here, Defendants were the treating providers of the

21   patients who left Traverse. Defendants thus had a duty of care to inform their patients of their

22   departure from Traverse and to offer to continue providing services should the patients wish to

23   follow.

24

1    Because Traverse has failed to adequately support its claims that the patient information

2    is a trade secret the Court DENIES its Motion for Summary Judgment.

3    Defendants request the Court sua sponte grant summary judgment in its favor regarding

4    Traverse's trade secret claims. "[I]f one party moves for summary judgment and . . . it is made to

5    appear from all the records, files, affidavits and documents presented that there is no genuine

6    dispute respecting a material fact essential to the proof of movant's case and that the case cannot

7    be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-

8    moving party." Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982). The Court notes

9    the parties are still entwined in discovery disputes, despite being two months from trial, that are

10   currently before the Court. (Dkt. No. 83.) However, because any information supporting

11   Traverse's assertion that the patient information is a trade secret would be in Traverse's control,

12   not Defendants, the Court GRANTS Defendant's request and sua sponte GRANTS summary

13   judgment in favor of Defendants on Traverse's trade secrets claim.

## CONCLUSION

15   Because Traverse cannot meet the threshold inquiry of demonstrating a protectable trade

16   secret, the Court DENIES its Motion for Summary Judgment. And because it failed to put forth

17   evidence that support its claim, the Court sua sponte GRANTS summary judgment in favor of

18   Defendants and DISMISSES Traverse's DTSA and UTSA claims. Traverse's only remaining

19   cause of action is an Intentional Interference with Business Expectancy claim, which Defendants

20   ask the Court to dismiss given that Traverse's DTSA claim was its only federal cause of action,

21   and the parties are not diverse. The Court DENIES Defendants' request given the how far along

22   the case is and its proximity to trial.

23   //

24

The clerk is ordered to provide copies of this order to all counsel.

Dated April 19, 2024.

Marsha J. Pechman
United States Senior District Judge